Good morning. Chief Judge, your honors, may it please the court, Molly Briscus on behalf of Appellant Richard Rojas, I'd like to reserve two minutes for rebuttal. The district court's decision that the Arizona Court of Appeals decision was a reasonable application of federal law is incorrect for two independent sufficient reasons. Number one, Mr. Rojas was sentenced in 2001, well before Miller was decided, and the sentencing court failed to consider his youth and its attendance circumstances, or how children are different and how those differences irrevocably counsel against irrevocably sentencing him to life in prison. Considering his chronological age and his miserable childhood was not constitutionally adequate. Number two, at the time, Arizona's scheme did not allow for any sentencing option that afforded any defendant the opportunity for parole. So Arizona's scheme was mandatory under Miller. So I have a question for you about what we ought to do procedurally in this case, because in, I believe it was 2016, the Arizona Supreme Court decided in Valencia, which appears to be an avenue for persons in your client's situation to have a hearing on these very issues. Should we essentially send the case back and stay what we do here while the client pursues a Valencia hearing? No, Your Honor, we would argue that the Valencia hearing, which is a burden-shifting hearing where the defendant has to prove that he was not irreparably corrupt, is an inadequate remedy. And the remedy that he's seeking here, why he's in federal habeas court, is he believes he's entitled to a resentencing hearing, where the state would have to prove in a normal sentencing hearing where they have the burden to show that the sentence of life without parole is appropriate for him. So we don't believe that Valencia allows an adequate remedy for him, which is why he's proceeded in federal habeas. Can I ask you a question? You just said right now, you referenced that Arizona's sentencing structure scheme at the time that your client was sentenced was mandatory sentencing scheme. If we conclude that it was, and that it didn't allow for parole after so many years, but we're also persuaded that the sentencing judge adequately considered Mr. Rojas' youth as required under Miller, what happens then? Is he still entitled to habeas relief? Because that seems to be the main question before us. Yes, Your Honor. I think that if you find that the scheme was mandatory, and I think that's the correct answer, at the time the options that were available to a sentencing judge were natural life or life with the possibility of release, and the definition of release did not include parole because of the legislature's abolition of parole for cases that happened after 1994. So I think that ends the court's the opportunity for a sentence where he or she would be released on parole, which makes it a mandatory sentencing scheme under the clear language of Miller. What happens if the state courts were mistaken, and the sentencing judge thought that he had that authority, thought that there was parole eligibility? Well, I don't think that a judge's mistaken belief at the time when the salvages Mr. Rojas' unconstitutional sentence. At the time, I think to say that the sentencings were happening in a chaotic manner is probably an understatement. I think some judges perhaps thought they had between the sentences that were available, same with defense attorneys, I think same with the state. And so, you know, born out of that chaos, different defendants got different sentences. Counsel, I have a question about Arizona law, and I want to make sure that I understand it correctly. At the time, because the court thought that it had the discretion, if the court concluded that the possibility of parole should be part of the sentence, isn't current Arizona law, doesn't it give him, in fact, that opportunity for persons in that same situation, that is, who were sentenced at the time that your client was sentenced, were Yes, I think what your honor is referring to is that the legislature after Montgomery passed a statute that allowed for the defendants that had received a sentence of life with the possibility of parole, the opportunity for parole, that was a post Montgomery. So if a judge actually thought that he or she had that opportunity, whether mistakenly or not, and thought about it and exercised discretion, if the inquiry was sufficient under Miller, I'm not really sure I understand why that would be mandatory. Well, because it, first of all, it wasn't in effect at the time that he was sentenced, which is when this court should look at and view the sentencing scheme. Number two, it doesn't apply to defendants like Mr. Rojas. Number three, as I stated before, it was a chaotic scheme. We don't know the separation of who received a natural life sentence versus who received a life with the possibility of release sentence, which has now been transformed into something where the parole is possible. We don't know why or if it was the correct sentence for those defendants because of the manner in which the sentencing were unfolding. So the relief that Mr. Rojas is seeking is a resentencing where it's done right and he has the opportunity to present evidence of the type that Mr. Briones and Mr. Jones was able to present after getting a proper resentencing as well. Did the sentencing judge here think that he had discretion to sentence Rojas to a parole eligible sentence? Well, I think that's a good question and I'm not sure. From the record, he, I just don't know if we know. He said, I am sentencing you to the maximum sentence in the transcript, but I don't know that if the parties knew that there was actually a difference and that they all didn't end up at the same place, which is natural life, if the sentencing would have unfolded in the manner that it did. The reason I ask is the Arizona Court of Appeals stated that the sentencing judge knew he could sentence Rojas to natural life or with the possibility of parole, but as has been discussed, Arizona law did not allow the sentencing judge to sentence Mr. Rojas to a parole eligible sentence, only life with the possibility of release. I think that's what you have stated already. I'm trying to figure out how should we interpret the Arizona Court of Appeals statement since it seems impossible. I don't know if that's the right word, but I'm asking. It seems hard to understand how the sentencing judge would have known something that wasn't true. Well, I think the Court of Appeals statement there is an incorrect statement of law. They don't engage at all with the constitutional implications of the legislature abolishing parole at the time. So there was no sentence at the time that allowed parole. So I think the Arizona Court of Appeals... Was it an incorrect statement of law or an incorrect statement of fact? I think it's an incorrect statement of law because it's determining what the sentence says. And I think that inquiry is so intertwined with Miller's requirement that there's no mandatory life without parole that it's a question of law that this court can reach. I know you're running out of time, but these are a couple of questions that I want to go ahead and ask you. So let me ask you, does the harmless error analysis apply here? No. Well, no, Your Honor. The state did argue that harmless error applied because on this record the state feels that it knows what the right sentence is for Mr. Rojas. But I think that misses the entire point of his petition, which he is asking for a resentencing where he gets to present evidence to the sentencing judge who would have discretion to sentence him to something other than life in prison. And until that record is established, we don't know what the correct sentence is for him. And for this court or the state to say that they know what the right sentence is on this cold record, I think impinges upon the state's administration of its criminal system. One last question for you. If we find that the Arizona sentencing structure that was present here, a scheme, was mandatory in that it didn't allow for parole, does it matter whether the sentencing judge considered whether Mr. Rojas' use counseled against a natural life sentence? I guess I'm asking a question sort of opposite of what Judge Graber, what the emphasis on the scheme rather than on the juvenile, consideration of him as a juvenile? Well, I think that that a little bit goes to the fact that Miller has two aspects to its holding. One is the procedural aspect and one is the substantive aspect. And I think the sentencing scheme goes to the procedural rule that a mandatory life sentence for juveniles is unconstitutional. But the substantive component, which I think goes to the heart of what happened at the sentencing hearing, is an independently sufficient reason for this court to grant his habeas petition because he, you know, the sentencing court did not consider how children are different and how those differences counsel against irrevocably sentencing someone to life in prison. Okay, thank you very much. Thank you. I took you over time. I'll give you a minute or two. Thank you, Your Honor. Counsel? Good morning. May it please the court. Lindley Wilson, Arizona Deputy Solicitor General, representing respondents in this matter. To address the court's questions where opposing counsel left off, the question of whether Miller is fundamentally a question for state courts. Here, the Arizona Court of Appeals in 2015 stated that Arizona law was not mandatory. The trial court had discretion under Arizona sentencing statute expressly to impose something other than life imprisonment. And so that is under Edpus standards of review. That is critically important. And I think even the United States v. Mississippi makes this even more evident. At page 1312 of that decision, when the Supreme Court characterized Mississippi's law as mandatory, it cited to the Mississippi Supreme Court's decision in Parker v. State. And in turn... I'm sorry, but isn't one of the central components of Miller, you know, the emphasis on life with the possibility of parole? I mean, can we just read that out? I'm having a little trouble with that. I think the core focus of Miller is that juvenile offenders receive an individualized sentencing determination. And so, and I think the most helpful decision for this court to review, which is the one that the district court correctly relied on, is Bell v. Uribe from this court. And in that situation, that came out of California, which is, for all intents and purposes, indistinguishable from... that sentencing statute is indistinguishable from Arizona law. And this court reversed the grant of habeas relief on a Miller claim under Edpus deferential standards of review. And the court did that for two reasons. First, the face of California sentencing statute afforded the judge discretion to impose a sentence of 25 years to life imprisonment in recognition that some youthful offenders might warrant more lenient treatment. And second, this court looked to the actual sentencing transcript in the record. And there, the sentencing judge actually considered mitigating and aggravating factors under a sentencing procedure that afforded discretion and leniency. This court stated, as is evident from the transcript of the sentencing hearing, the trial judge did make an individualized sentencing determination, just not one favorable to the habeas petitioner. And so I think if this court reaches a different conclusion in any Arizona cases, that would necessarily create a conflict with the Bell case. And so that's the most applicable case for this court to look at. So let me ask you, what do you... what's the evidence here? Because it seems like Miller requires that the sentencing judge consider something more than just an offender's age, because you don't understand age when deciding to impose a natural life sentence. So can you just remind me what's the evidence here for why the judge did so? What else did he consider besides the age? Of course. And I'd first like to point out that there's no evidence in the record here supporting the assertion that there was chaos at the time or that trial courts were doing things inconsistently. And every habeas case, of course, has to be analyzed on its own merits and giving deference to the Court of Appeals decision that's at issue here. But on this exact record, and the sentencing transcript starts at ER 445, the court indicated that it considered the pre-sentence report, volumes of records from social services agency that detailed Rojas' upbringing in the foster care system and the physical abuse inflicted on him by his mother. At the sentencing proceeding itself, the judge considered comments from his family. His mother reminded the judge that Rojas had no prior trouble with the law and asked that the judge consider her son's background. And Rojas' grandmother stated that he was very intelligent and asked for leniency. And in both of the sentencing memorandums that the court also indicated it considered, the state explained that the range of penalty pursuant to ARS 13703A for a conviction of first-degree murder includes a sentence to natural life or a life sentence with no release for 25 calendar years. And so Rojas, on the other hand, provided a chart of his sentencing exposure and said that for first-degree murder, it would expose him to a life sentence for which parole is optional. So everyone in this record operated under the belief that there were two options as expressly provided for in 13703A. And the fact that there was a parole implementation issue that could have arisen in the future does not mean that that can't render Arizona law mandatory in the sense of formular purposes. To the extent there's reasonable debate about what the law provided at the time, we know under Ed Post's standards of review that that's simply not enough. But if there's fair-minded disagreement, even assuming that this court doesn't defer to Arizona law on that question, it still doesn't warrant habeas relief. And then the other thing I would just quickly add is that the court also considered comments from Rojas himself at sentencing in which he maintained that the case involved a conspiracy against him and that he was convicted based on hearsay. And the trial court noted that the evidence was overwhelming that he was the person who shot these two victims at a car wash. And so I think these are the reasons that the district court looked to the Bell case out of California and found it virtually indistinguishable. So just to be clear, are you arguing that Arizona's sentencing scheme was not mandatory at the time of the sentence because the sentencing judge could choose between natural life and life with the possibility of release or because everybody understood or mistakenly that he could be sentenced to parole? I think whether you look at it either way, it was not mandatory. I think we could even look at the sentencing statutes alone and say that the sentence was not mandatory within the meaning of Miller. And it's important not to, but at the same time, it because... And why is that? Why? Because it seems like you reread Miller and the Supreme Court repeatedly says, you know, compares natural life with the possibility of parole. And we know that release here, are you saying that release here would have meant parole because it didn't, right? Well, parole is a subset of release under ARS 13703A. The last clause of that statute says that if the court does not sentence the defendant to natural life, the defendant shall not be released on any basis until completing 25 years if the victim is 15 or older or 35 years if the victim is under 15. And so that implicitly, that's very different from the situation in Miller v. Alabama and Jones v. Mississippi, where those sentencing statutes said very plainly that for this crime, the options were sentenced to death or life imprisonment without parole. And so it's not an unreasonable application of Miller for the Arizona courts to conclude that their sentencing scheme is unlike those at issue in Miller and even Jones v. Mississippi. If we look there, Arizona law has a stark contrast between the sentencing statutes at issue in those cases. Is it correct that in Arizona, if a sentence is illegal but favors the defendant and the state does not appeal it, that the state will carry out the illegal sentence that favors the defendant? Yes. Arizona courts regularly enforce illegally lenient sentences. And so if we were even in that situation, I think that that would still not be an unreasonable application of Miller if there was an individualized sentencing conducted in the case and that individual determination, which is really what Miller is all about. The reason Miller prohibits a mandatory life without parole sentence is that doing so precludes consideration of the defendant's age and those hallmark features that Miller talks about. The other point I would like to draw the court's attention to is that in the Valencia case, which is cited in the briefs, the concurring judge expressly stated that although Miller might imply that Arizona law is mandatory, it's not. And that as far back as at least 1991, if not earlier, courts were required to not only consider a juvenile's age, but also the level of maturity, judgment, and involvement in the crime. And so we have Arizona courts repeatedly announcing that our laws are not mandatory for purposes of Miller. And so it's not appropriate for federal courts to second guess that judgment in previous proceedings. Let me just ask you a follow-up from the question I asked you before, because let's just say we disagree with you that the sentencing scheme at the time was a mandatory sentencing scheme because at a minimum, you know, a discretionary scheme would seem to require a choice between natural life and life with the possibility of parole. And I thought that the Arizona sentencing scheme here, the possibility of parole effectively met life with the possibility of commutation. So are you saying otherwise? Well, I guess one way to put it is that whatever Arizona law authorizes a trial judge to do at the time is completely distinct from whether that sentence will actually be carried out or effectuated. And so through ARS 13-7-16, for example, the legislature cured any implementation issue that might arise down the road. So we don't look at the law at the time when he was sentenced and what it said. Well, I think... It was a later fix. That was a later fix, right? It is a later fix for an implementation issue that is distinct from whether the law required a mandatory sentence at the time of his sentencing. If there's several ways to view Arizona law or fair-minded jurists could disagree about how to interpret Arizona law, that's not enough for relief under AEDPA. And I do see that I'm out of time, but if the court has no further questions, we would request that the court affirm the district court's order. Thank you. Ms. Brescias, I'll give you one minute. Thank you, Your Honor. Just quickly, the state's reliance on Bell is misplaced because Bell was decided before Montgomery, and the Bell decision does not seem to encompass the substantive rule of Miller, which we know is there because Montgomery held that Miller was retroactive. And the only way it could be held retroactive is if there was a substantive component. And so I don't think Bell is applicable for that reason, but also the California scheme at issue, the state has tried to equate it to the Arizona scheme, which is absolutely not true. The California scheme, first of all, it was a specific scheme for someone who was between 16 and 18, which is very different from Arizona because Arizona, everyone was the same, but the California judge had an actual choice between life without the possibility of parole or 25 to life, which allowed for the opportunity for parole at 25 years. And the state has not provided a sufficient answer as to why the abolition of parole does not make the scheme mandatory. Release, we know is different. Executive clemency or commutation has been held by the Supreme Court to be constitutionally completely different than the opportunity for parole. So that's what I'd say on Bell. And finally, I don't think you can read, I think if you read the sentencing transcript, some of the evidence that came up, like the state brought up, Mr. Rowe has this allocution, that's exactly the type of evidence that would be seen in a very different light in a post-Miller era. And that is why the Supreme Court has indicated to judges, they must consider why children are different and how those differences counsel against irrevocably sentencing them to life in prison. Thank you very much. Thank you both for your oral arguments here today. The case of Richard Rojas versus Charles Ryan is now submitted.
judges: MURGUIA, GRABER, Fitzwater